**NOTICE**

Decision filed 01/29/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220081-U

NO. 5-22-0081

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 04-CF-23 |
| | ) | |
| ALMOND GALLOWAY, | ) | Honorable |
| | ) | Charles D. Mockbee IV, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's dismissal of the defendant's amended postconviction petition at the second stage of the postconviction proceedings is affirmed where (1) he failed to make a substantial showing of a constitutional violation premised on the use of allegedly perjured testimony, and (2) he forfeited his challenges to his natural life sentence by failing to raise his arguments in his direct appeal and by not properly raising an ineffective assistance of appellate counsel argument.

¶ 2    On January 22, 2022, the circuit court of Vermilion County granted the State's motion to dismiss the defendant Almond Galloway's second amended postconviction petition during the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant appeals this dismissal, arguing that the trial court erred in dismissing his second amended postconviction petition at the second stage of the postconviction proceedings where the petition made a substantial showing that (1) he was denied a fair trial and

due process of the law by the State's knowing use of perjured testimony; (2) his natural life sentence violated the proportionate penalties clause of the Illinois Constitution; and (3) the trial court abused its discretion in sentencing him to natural life, and his sentence "should have been challenged at every level." For the reasons that follow, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4      In November 2004, the trial court found the defendant guilty of one count of first degree murder of James Pope that occurred on December 28, 2003. Subsequently, on December 17, 2004, the court sentenced him to natural life in prison. On direct appeal to the Fourth District Appellate Court, the defendant's sole argument was that the evidence was insufficient to prove him guilty of first degree murder beyond a reasonable doubt; he argued that the evidence only supported a conviction for involuntary manslaughter. The Fourth District affirmed the defendant's conviction. *People v. Galloway*, No. 4-05-0280 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5      On March 24, 2009, the defendant filed a *pro se* postconviction petition, arguing, *inter alia*, that the trial court abused its discretion in sentencing him to natural life in prison, that his trial counsel was ineffective for allowing the State to present coerced and fabricated testimony at the trial, that the State engaged in misconduct for presenting coerced and fabricated testimony, and that his appellate counsel was ineffective for failing to raise the arguments contained in his *pro se* petition in his direct appeal. Attached to the *pro se* petition was an affidavit dated January 29, 2008, from Derrick Foggie, a witness who testified at the defendant's trial and who was present on the night of the shooting. In the affidavit, Foggie claimed that the State and/or the investigating detective coerced him into giving false testimony at the defendant's trial. Specifically, he stated that he had previously told investigating police officers that Pope's death was an accident, but he

2

was later coerced into changing "those facts." However, this affidavit did not identify the facts that he had lied about at trial. He also indicated that, in exchange for his false testimony, he was not charged as an accessory to murder in the incident; and he had an unrelated Vermilion County case that was dismissed, even though he had testified that the unrelated case was not dismissed because of his cooperation in the present case.

¶ 6    On April 13, 2009, the trial court entered an order, advancing the defendant's postconviction petition to the second stage of the postconviction proceedings and appointing him counsel. In the order, the court found, in pertinent part, that the defendant's arguments regarding his sentence, prosecutorial misconduct, and effectiveness of his trial counsel were forfeited because he failed to raise those claims in his direct appeal. The court also found that his argument concerning his sentence did not raise a claim of constitutional magnitude. However, the court concluded that his ineffective assistance of appellate counsel claims were not forfeited because they could not have been raised on direct appeal.

¶ 7    On May 6, 2016, the defendant's counsel filed a first amended postconviction petition, arguing, *inter alia*, that appellate counsel was ineffective for failing to argue that the trial court abused its discretion in sentencing the defendant to natural life without parole and for failing to argue that the State engaged in misconduct by knowingly coercing a witness into giving false testimony. Attached to this petition was a second affidavit from Foggie dated May 3, 2016, in which he stated that he witnessed the defendant shooting Pope, and it was accidental. At the time of the shooting, Foggie was out on bond for a Vermilion County Class X felony offense of possession of a controlled substance with intent to deliver, and after the shooting, he was arrested and charged with another Class X felony offense of possession of a controlled substance with

intent to deliver in Champaign County. He subsequently pled guilty to the Champaign County offense and was sentenced to 12 years' imprisonment.

¶ 8    While serving that sentence, a Vermilion County prosecutor visited Foggie to discuss the pending case against the defendant for Pope's death. The prosecutor told Foggie that, if he testified that he was in the room at the time of the shooting, he would be charged as an accessory to the murder. The prosecutor then stated that he needed to place himself outside of the room that night to avoid being charged as an accessory. The prosecutor also told him that, if he testified that he was not in the room that night, his pending charge in Vermilion County would be dismissed. Thus, Foggie indicated that his testimony that he was outside the bathroom when Pope was shot was untrue and that it was coerced. He noted that, after the shooting, he told the investigating officers the truth about what occurred that night, *i.e.*, that he was in the bathroom when the shooting occurred and that the shooting was an accident. He also noted that, on the day of the shooting, he and the defendant were drunk and high.

¶ 9    On May 9, 2017, the defendant filed another first amended petition for postconviction relief in which the same arguments were raised. However, attached to this petition was a slightly different version of Foggie's affidavit, which was dated April 19, 2017. This version was substantively the same as the previous affidavit.

¶ 10    On July 7, 2021, the defendant's counsel filed a second amended petition for postconviction relief, which made the following constitutional claims: (1) the State committed prosecutorial misconduct for coercing Foggie into testifying falsely; (2) the trial court erred by allowing the State's expert witness to remain in the courtroom during the defense expert witness's testimony; and (3) the defendant's trial counsel was ineffective for failing to show the defendant was impaired by alcohol or drugs at the time of the shooting, to object and move to strike certain

4

witness testimony that the defendant was angry or upset before he shot Pope, to cross-examine Foggie about the amount and value of the missing drugs, and to object or move to strike the State's comments regarding any agreements or promises made to Foggie for his cooperation. The petition also alleged that appellate counsel was ineffective for failing to raise the above arguments on direct appeal and for failing to argue that the trial court abused its discretion in sentencing the defendant to a term of natural life in prison. The petition further alleged that the defendant's sentence violated the proportionate penalties clause of the Illinois Constitution. Attached to the petition was Foggie's April 19, 2017, affidavit.

¶ 11　On July 21, 2021, the State filed a motion to dismiss the defendant's second amended postconviction petition. In the petition, the State argued that the defendant's claims of prosecutorial misconduct, ineffective assistance of trial counsel, and excessive sentence were forfeited as they could have been brought in his direct appeal. As for his claims concerning the effectiveness of his appellate counsel, the State contended that the defendant failed to make a substantial showing that his constitutional rights had been violated in that he did not substantiate his claims with "actual facts."

¶ 12　On July 29, 2021, the defendant filed a reply to the State's motion to dismiss. After hearing counsels' arguments at the January 27, 2022, hearing on the State's motion to dismiss, the trial court stated, in pertinent part, that all of the issues raised in the defendant's amended postconviction petition were forfeited, except for his claims of ineffective assistance of appellate counsel. As for the prosecutorial misconduct claim, the court noted that there was nothing that corroborated Foggie's assertion that he was asked to commit perjury. The court explained that it was not sure how Foggie being in the room during the actual shooting changed the situation, noting that Foggie testified that he believed that the shooting was an accident, that he and the defendant

5

did not intend to kill Pope and just intended to scare Pope, and that they had been drinking all day. The court, thus, noted that Foggie had testified consistently with what was contained in his affidavit, except for whether he was inside the room or outside the door when the shooting occurred.

¶ 13 As for the argument that the defendant's sentence was excessive, the trial court noted that there was not anything in the record that would indicate that the sentence was excessive under the circumstances. Thus, the court granted the State's motion to dismiss the petition. That same day, the trial court entered a written order, granting the State's motion to dismiss. The defendant appeals.

¶ 14 II. ANALYSIS

¶ 15 On appeal, it appears the defendant is arguing that the trial court erred in granting the State's motion to dismiss where (1) the defendant was denied a fair trial and due process of the law by the State's knowing use of perjured testimony; (2) his natural life sentence violated the proportionate penalties clause of the Illinois Constitution; and (3) the trial court abused its discretion in sentencing him to natural life in prison, and his sentence "should have been challenged at every level." Although the defendant had raised additional issues in his amended postconviction petition, it does not appear that he is challenging the court's decision on those issues in his appeal. Thus, our decision will only address the arguments that the defendant is clearly raising in his appellate brief.

¶ 16 A. Postconviction Rules

¶ 17 The Act provides a three-stage procedure for a petitioner alleging substantial deprivations of his constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). At the first stage, the trial court, without input from the State or further pleadings from petitioner, determines if the petition

6

is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). If the petition is not dismissed at this stage, then it advances to the second stage where counsel may be appointed to indigent petitioners (725 ILCS 5/122-4 (West 2020)) and where the State is permitted to file a motion to dismiss or an answer to the petition (*id.* § 122-5). *Hodges*, 234 Ill. 2d at 10-11. At this stage, the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If petitioner satisfies his burden of making a substantial showing of a constitutional violation, then the petition advances to a third-stage evidentiary hearing. *Id.* However, if no such showing is made, then the petition is dismissed. *Id.* The second-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Chears*, 389 Ill. App. 3d 1016, 1024 (2009).

¶ 18     At the second stage of the postconviction proceedings, the question is whether the allegations of the petition, taken as true unless positively rebutted by the record, and the attached supporting materials, make a substantial showing of a constitutional violation. *People v. Sanders*, 2016 IL 118123, ¶ 31; *People v. Domagala*, 2013 IL 113688, ¶ 35. This inquiry does not require the trial court to engage in any fact-finding or credibility determinations. *Domagala*, 2013 IL 113688, ¶ 35. Instead, those determinations are made at the evidentiary stage of the litigation. *Id.* "Since there are no factual issues at the dismissal stage of the proceedings, the question is essentially a legal one, which requires the reviewing court to make its own independent assessment of the allegations of the petition and supporting documentation." *Sanders*, 2016 IL 118123, ¶ 31.

¶ 19                         B. Foggie's Trial Testimony

¶ 20     The defendant claims that the State coerced Foggie into falsely testifying that Foggie was not in the bathroom at the time the defendant shot Pope in exchange for not being charged as an accomplice to Pope's murder and for the dismissal of an unrelated Class X felony offense. He also

7

claims that the State told the trier of fact that no promises had been made to Foggie in return for his testimony at trial but that was contradicted by Foggie's affidavit. In response, the State argues that the claim was forfeited where the defendant testified that Foggie was in the bathroom with him at the time he shot Pope and completely failed to cross-examine Foggie on this aspect of Foggie's testimony at trial. Alternatively, the State contends that the defendant's claim that the State's use of allegedly perjured testimony failed on its merits as it was tangential testimony that did not prejudice the defendant and could not have reasonably affected the verdict.

¶ 21    At the November 2004 trial, Foggie testified that, on the day of the shooting, he and the defendant drank all day. They were in the bathroom when they confronted Pope about missing drugs that had belonged to Foggie. Foggie indicated that he was attempting to scare Pope into returning the drugs. He did not remember what was said to Pope but stated that he was just trying to get his drugs back, and the defendant was backing him up. The defendant had a revolver in his hand. Foggie briefly left the bathroom and subsequently heard a gunshot from inside the bathroom. He noted that the bathroom door was half open at this point. When he returned to the bathroom, he saw Pope lying on the floor. He testified that they were just trying to scare Pope into returning the drugs, and the shooting was an accident. He indicated that he was not charged as an accessory in this case because he cooperated with the State. He also indicated that his Vermilion County case was dismissed but stated that the dismissal was not in exchange for his testimony. However, after Foggie's testimony, the State clarified that no deal had been made with Foggie for his testimony, although Foggie apparently thought a deal had been made.

¶ 22    The defendant then testified that he and Foggie had been drinking and smoking marijuana that day. They confronted Pope about the missing drugs while they were in the bathroom. The defendant pointed the gun at Pope's face, intending to scare him into returning the drugs. The

8

defendant then continued talking with Pope and again pointed the gun at him. At this point, the gun accidentally discharged. The defendant denied doing anything to discharge the gun and denied intending to shoot Pope. The defendant's testimony placed Foggie in the bathroom when the shooting occurred.

¶ 23     In his affidavit attached to the relevant postconviction petition, Foggie indicated that he told the investigating officers that he was present in the bathroom and witnessed the defendant shoot Pope. He noted that the shooting was accidental and that he and the defendant were drunk and high that day. However, he claimed that the State coerced him into changing his testimony; the State allegedly wanted him to testify that he was outside the bathroom when the shooting occurred. In exchange for his false testimony, the State indicated that he would not be charged as an accessory to the murder and his pending, unrelated Class X felony offense would be dismissed. That case was dismissed on May 3, 2004, before the defendant's trial.

¶ 24     In dismissing the defendant's second amended postconviction petition, the trial court concluded that this argument was forfeited because it was not raised in the defendant's direct appeal. However, the court addressed the merits of the argument because the defendant raised a claim that his appellate counsel was ineffective for failing to raise it on direct appeal. Although Foggie's affidavit is dated on April 19, 2017, and is based on matters outside of the record, the defendant was aware of the inaccuracies in Foggie's testimony at the time of the trial. As previously noted, the defendant testified at trial that Foggie was inside the bathroom when the shooting occurred while Foggie testified that he had briefly left the bathroom and heard a gunshot coming from inside the bathroom. The defendant could have cross-examined Foggie about this inconsistency at the trial or argued, on direct appeal, that his trial counsel was ineffective for not challenging Foggie's testimony. However, he failed to do so. Accordingly, the trial court's finding

9

that this issue was forfeited was correct. See *People v. Blair*, 215 Ill. 2d 427, 443 (2005) (in postconviction proceedings, *res judicata* and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal). Further, the defendant does not argue in his appellate brief that his direct appeal counsel was ineffective for failing to raise this issue on appeal.

¶ 25    However, even assuming *arguendo* that this issue was not forfeited, we find that the defendant did not make the requisite substantial showing. The State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law. *People v. Olinger*, 176 Ill. 2d 326, 345 (1997). To establish a due process violation, "the prosecutor actually trying the case need not have known that the testimony was false; rather, knowledge on the part of any representative or agent of the prosecution is enough." *Id.* at 347. The police are agents of the prosecution. *People v. Smith*, 352 Ill. App. 3d 1095, 1101 (2004). A defendant's conviction must be set aside if there is a reasonable likelihood that the perjured testimony affected the jury's verdict. *Olinger*, 176 Ill. 2d at 345. This standard is equivalent to the harmless error standard. *People v. Lucas*, 203 Ill. 2d 410, 422 (2002). In the context of a postconviction petition, a defendant is only entitled to an evidentiary hearing if there is a substantial showing of a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Id.* at 424.

¶ 26    Here, in addressing the merits of the claim, the trial court stated that it was not sure how Foggie being in the room during the shooting would change the situation since Foggie had testified that he believed the shooting was an accident, he and the defendant were intending to scare Pope, and they had both been drinking all day. Assuming the truth of the allegations in Foggie's affidavit, we agree with the trial court's reasoning and find that there was nothing about Foggie's affidavit that could have reasonably affected the court's verdict.

10

¶ 27    In affirming the conviction on direct appeal, the Fourth District indicated that the evidence was undisputed that the defendant pulled out the gun and held it pointed at Pope's face at a close range and asked him to return the drugs. Pope was killed by a single shot to the head. Instead of showing immediate remorse or finding help for Pope, the defendant ran. Although both the defendant and Foggie testified that the shooting was an accident, the trial judge rejected the defendant's claim that he merely acted recklessly in pointing the gun at Pope. In making this decision, the court stated that it had observed the defendant testify and determined a large part of his testimony was self-serving and not credible.

¶ 28    The trial court also noted that the defendant had a motive to kill Pope, both to punish him as a thief and to send a message to others not to interfere with his drug business. The defendant pointed his cocked gun in the victim's face and repeatedly demanded to know where the drugs were or that they be returned. When Pope did not give him the answer he wanted, he cocked the gun again and shot Pope in the head. The defendant can hardly claim that pointing a loaded gun in Pope's face in the small confines of a bathroom and cocking it twice while threatening him did not create a strong probability of death or great bodily harm. Thus, we conclude that Foggie's testimony that he was inside the bathroom at the time of the shooting would not have reasonably affected the trial court's verdict.

¶ 29    As for the contention that the State misrepresented any agreements entered into with Foggie in exchange for his alleged false testimony, we note that Foggie's testimony was consistent with his affidavit. At trial, Foggie testified that he was not charged as an accessory in exchange for cooperating with the State. Although, during the trial, the State indicated that there was no agreement made about Foggie's testimony, the defendant makes no argument about how the State's alleged misrepresentation affected the trial court's verdict. Thus, the defendant has failed

11

to make a substantial showing of a constitutional violation premised on the use of Foggie's allegedly perjured testimony.

¶ 30                                    C. The Defendant's Sentence

¶ 31    The defendant next contends that his sentence violates the proportionate penalties clause of the Illinois Constitution and that the trial court abused its discretion in sentencing him to natural life in prison. Initially, although the defendant acknowledged in his appellate brief that his appellate attorney did not challenge his sentence on appeal and argued that the sentence should have been challenged at "every level," the defendant's brief fails to cite to any case law that would support an ineffective assistance of counsel argument. As the defendant's challenge to his sentence could have been raised on direct appeal, and the defendant has not properly raised any argument concerning the effectiveness of appellate counsel, we find that the defendant has forfeited these challenges to his sentence. Moreover, the defendant has not argued that his natural life sentence fell outside the statutory limits for first degree murder. A proper postconviction petition raises a valid constitutional violation. See *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). A sentence that falls within statutory limits does not involve a constitutional question that may serve as the basis for postconviction relief. *People v. Rademacher*, 2016 IL App (3d) 130881, ¶ 37. Thus, we find that, even if we considered the defendant's forfeited excessive sentence claim, it is not properly raised in a postconviction petition as it does not involve a constitutional question.

¶ 32    However, assuming *arguendo* that his challenges to his sentence were not forfeited, we note that the defendant has failed to make a substantial showing that his constitutional rights were violated. The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Cons. 1970, art. I, § 11. A sentence

violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002).

¶ 33   To determine whether the penalty shocks the moral sense of the community, a reviewing court must consider the gravity of defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency. *Id.* at 340. This determination calls for the balancing of the retributive and rehabilitative purposes of punishment, and this balancing requires careful consideration of all factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d 96, 109, (2002). Some of the relevant factors that the court should consider in determining the appropriate sentence are defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it. *Id.*

¶ 34   The trial court has broad discretion in determining the appropriate sentence. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 53. Generally, where the trial court's sentencing decision is within the statutory limits, we may not disturb it absent an abuse of discretion. *People v. Vasquez*, 2012 IL App (2d) 101132, ¶ 68. However, a trial court abuses its discretion when it considers an improper factor in aggravation. *Musgrave*, 2019 IL App (4th) 170106, ¶ 53.

¶ 35   Here, the defendant contends that his sentence violated the proportionate penalties clause because he was 22 years old at the time of the offense, there was no consideration or finding that he was beyond rehabilitation or was irretrievably broken to the extent that a life sentence was required, the trial court improperly considered evidence of his gang membership when the record did not support this consideration, and the court heard the State's argument that he should be

13

punished for his "attitude." To the extent that the defendant's challenges to his sentence are based on *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, we note that the defendant has failed to cite or discuss these cases in his appellate brief. Moreover, at the hearing on the State's motion to dismiss, the defendant's attorney noted that the challenges to the sentence were not based on *Miller*. Thus, we will not consider this argument in our decision.

¶ 36    In sentencing the defendant to natural life, the trial court noted that the defendant and his associates came to Danville with the purpose of selling illegal drugs out of a "crack house." The residence was located in a public housing project where, presumably, children, senior citizens, and other law-abiding citizens lived. The defendant shot a man, who was unarmed and posed no threat to him, at point-blank range in the head because he believed that the man had stolen his drugs. The court noted that he had a criminal history, which included the following: a 1999 delivery of a controlled substance conviction for which he was sentenced to eight years in prison but was released early in the sentence, and a 2001 aggravated unlawful use of a weapon conviction for which he was sentenced to three years.

¶ 37    The trial court also noted that the presentence investigation report indicated that the defendant had been and/or was a member of an organized gang. The court stated that the evidence indicated that the defendant had chosen a life of gang membership, drug dealing, and guns. The court considered the following aggravating factors: his conduct caused serious harm and death, the defendant's past history of criminal behavior, a sentence necessary to deter others from committing the same crime, and he personally discharged a firearm that proximately caused Pope's death.

¶ 38    The defendant argues that the trial court abused its discretion in sentencing him to natural life when it improperly considered his membership in a gang and comments by the State that he should be punished for his "attitude." We disagree. The trial court relied on the defendant's own

14

statement that he had been in a gang since he was 10 years old. The trial court has broad discretion to consider any reliable and relevant evidence when determining an appropriate sentence. *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008).

¶ 39 Also, the defendant has not pointed to any statement made by the trial court that would demonstrate that the court improperly relied upon the State's comments about the defendant's attitude in court and in complying with conditions of parole. Defendant has the burden to affirmatively establish that the sentence was based on improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Further, a trial judge is presumed to know the law, and on review, the appellate court presumes that the trial judge followed applicable law unless the record indicates otherwise. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 85. After considering the record, we conclude that the defendant has failed to make a substantial showing that his sentence violated the proportionate penalties clause or that the trial court considered improper factors when sentencing him to natural life. Accordingly, we affirm the trial court's dismissal of the defendant's second amended postconviction petition at the second stage of the postconviction proceedings.

¶ 40                                    III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the judgment of the circuit court of Vermilion County.


¶ 42 Affirmed.